Good morning, Deputy Attorney General Matt Mulford on behalf of the warden. I'd like to focus primarily this morning on the evidence in this case that indicates that we got the right people for this murder. This is a drug dealing and prostitution ring that was headed by a man named Michael Washington in San Diego. It involved his girlfriend and mother of his child, Lena Hickson, the prostitute, and that there were two other men, Mr. Hall and Mr. Shears, both who provided the muscle for the drug dealing. Are you focusing on that you got the right people because that's the strength of the evidence in the case? Yes, the strength of the evidence is that we've got the right people. As related to whether it's harmless error or not? As to whether it's rational, Your Honor. The instruction here that the district court thought required habeas relief was found to be irrational and frankly we're just puzzled by that because we can't see it at all. The instruction in this case permitted the jurors to draw a rational inference that if Mr. Shears possessed the victim's property after his death, which he assuredly did, then they should have inferred from other evidence and other instructions. Even to start there, he surely was in the car and he surely was around the car, but how do we know he was actually exercising ownership-like or possession-like control over the car? How do we know it wasn't somebody else who was doing that? Well, a couple answers. First, the cigarette butt with his DNA. Well, I know he was in the car, for sure. He was on the driver's side. Okay. He was in the wheel well, so it's not just he's in the car, he's driving the car. Witnesses saw him with his knees. Counsel, where exactly was the cigarette butt? It was found on the floorboard on the driver's side in the front of the car. A second cigarette was found in the back, but the one linking that we're quite confident based on the DNA was the driver's side. He's the driver. Another witness testified that they saw him with the car keys, and I want to emphasize that this car was destroyed only four days after the crime. So there's not a whole lot of time for a third party to come in and buy it and unknowingly possess his car the day before the car was destroyed. Counsel, we don't have any evidence as to who burned up the car. What do you do with the case of People v. Prieto, who says this instruction should not be given in rape or murder cases? The People v. Prieto is a case from the California Supreme Court. It was decided after this case went to trial, but during the appeal. The California Supreme Court said that as a matter of state law, this instruction should not be given in the future in this type of situation, and there are obvious policy reasons why this instruction is not particularly helpful. There's a risk of juror confusion in that courts such as yourselves may not be certain that the jury applied all of the instructions, applied the beyond-the-reasonable-doubt instruction, treated the circumstantial evidence appropriately, and they may have focused unduly on this one particular instruction. Now, we're confident that that did not happen in this case. Well, this is the – I guess I have two main problems, and I think you're starting in the right place, i.e., you know, how does this fit into the case as a whole. But the – there are two problems that trouble me that I'd like you to address. One is that the two main witnesses were obviously quite problematical. So they – and this is why the whole problem of a – of instructing an inference like this leads to problems. They could have believed those people, but they also could have understood this instruction to mean that – and if they did, then there was strong corroboration and there's no problem. But they also could have not believed them, but understood this instruction to say, that doesn't matter, all I need to know is that this guy possessed the car and a little more, a very little more. And so I don't need all those people. I can just get rid of them and say they don't matter at all. All that matters is he had the car and he was – you know, he knew these people and he was around at the time, and that would be good enough. And that is a fair reading of the inference, isn't it? Well, I guess when you address that, too, is would the inference have to be that because he had recently stolen property, that he therefore is guilty of murder? Is that the inference that would have to be made from this? And I mean, I guess I struggle with the fact that someone would find someone guilty of murder just because they – sure, having some of the victim's property is something that's always going to be evidence that a prosecutor is going to argue, and you're going to argue a lot of things. But would a jury really find someone guilty of murder just because they had some of the victim's property? I don't think any reasonable juror could. And so we need to – But the question is whether this instruction is telling them that they could. The instruction is telling them that the inference is permissible. Okay? And so – I.e., they could. I.e., they could, yes. And I.e., a reasonable reading of that is – and it would satisfy the beyond a reasonable doubt. I disagree with that. Why? Because there are other instructions that specifically mention this beyond a reasonable doubt. There were – these are excerpts of record in the 870s. There are other instructions that instructed the juror what to do with circumstantial evidence, which this no doubt is. And so that they could not attribute guilt based on circumstantial evidence unless they found it. So I was going to finish my question with a same-name related question, which is, to me, the real problem with this instruction, therefore, is not the main part of it, but the slight corroboration part of it. Because that's the part that seems to suggest that that's all you need and nothing else. I – that's not a – based on all the instructions and based on how the California courts treated this on appeal, they said that fear that you're identifying here, that the jurors might have focused on this and this alone, is not reasonably likely, you know, under the correct controlling constitutional law regarding instructions. So they identified the problem, the one you're addressing here, and that Judge Fletcher mentioned about why are we not giving this instruction anymore, because there's a very real risk here. But is there a reasonable likelihood that this instruction by itself is going to result in guilt? And the answer is no. They were – Okay. They had – they got the right instructions on murder, right? Yes. They got the right instructions on the special. And they made a special – they made a finding on the special. Correct. Okay. And they were advised of reasonable doubt. Now, are they separately advised of reasonable doubt on the special finding? No. The – How does that work? All the instructions are given in a packet. They're read by the judge. And I believe they actually have a copy of them with them in the room. One of the instructions says, read all the instructions and treat them together. Do not single anything out. There is beyond reasonable doubt. There is – circumstantial evidence may not be credited to convict unless it is Well, the instruction says circumstantial evidence is as good as direct. But if two things are subject to – if one interpretation is reasonable and the others are unreasonable, right? Exactly. I mean, I gave that instruction for – I heard it for 10 years as a lawyer, and I gave it for 10 years as a judge. But whether anyone understands it is a whole other thing. The import of that instruction is that it fixes the risk that we've been discussing, that they – i.e., that jurors would look at post-crime possession and then leap to the conclusion of murder. Except that they were told they could. I mean, that's what's so odd about this. I don't know why you would give any inference instruction of this kind. I mean, obviously, they can build this inference into a larger pattern of understanding as to what is a reasonable doubt. But they didn't say that. It says if you find that it's in possession, the fact of that possession is not self-sufficient, but there must be corroborating evidence, but it need only be slight. And then they go on, and then it doesn't even stop there. Then it says, as corroboration, you may consider the attributes of possession, time, place and manner, that the defendant had any opportunity to commit the crime of charge, the defendant's conduct was false or contradictory statements, et cetera. Now, why isn't the fair implication of that that this is a rational inference, as long as you have this very slight corroborating evidence? Isn't that what they're being told? In other words, they're being – the constructive evidence instruction is essentially being superseded by the directive that this is rational, if you meet this standard. Well, evidence wouldn't have come in if it was not rational. Not that the inference is rational with only slight corroborating evidence, including the time, place and manner of the possession. It has to be rational. But they're being told it's rational. They're being instructed that it's rational. They're at least being instructed as that much. And that the case law reflects. That's why if it's not rational, you can't do it. Under the facts, it has to be rational. Under – question? Counsel, looking at the other evidence in the case, the witnesses were pretty flaky and gave contradictory statements. So it's a case where I think we may have a real problem because without this instruction, I suggest that they could well come out the other way because of the nature of the testimony of these other folks. Look, can I first respond to the question and then I'll address you? Sure. Okay. But I thought that it all is a package question, really. Absolutely. When we're discussing whether this instruction is rational or not, it has to be. Okay? The instruction we're talking about. It has to be, meaning that it was required to be and it's not. It's an invalid instruction. Correct. Well, that's the law. And based on the facts here, if you did not have any connection to the stolen property of this victim, it is extraordinarily unlikely that you participated in the crime. It's just common sense. So linking this car that disappeared four days after the fact to Mr. Schur's is extraordinarily strong evidence of his guilt. And whether the instruction glosses over the fact or hides that or covers that fact, if we're talking about it's rational, then the district court errors. That's the first point. Now, turning to the other witnesses. I'm sorry. You're saying that it is rational to infer that murder from this evidence of possession. It's a weak inference, but, yes, it's rational. You know, Justice Cardozo has said as much. So, you know, the first point, that's error. And so we need to reexamine what the district court did from there. Actually, wasn't that Justice Cardozo's opinion? It seemed to me to be before inconsistent with the later law about shifting burden of proof to the prosecutor. We don't read it that way. I'm sorry? I'm sorry. We don't read it that way. He's saying that this is a valid inference. But in the context, you read it in context because under the law at the time, there was a shifted burden onto the defendant. And if there was a basis for the defendant seemed to have an obligation to explain why he was in possession if he wasn't the murderer. It's an old case, and I'll leave it to the court. That's what it says. There's a Supreme Court authority on our side that suggests the district court erred. Now, I would like to address these witnesses and the credibility. I'm going to need some time also with you, and I don't know if you can incorporate that in that. I suppose that I view it a little bit differently than Judge Fletcher, but maybe this you can cover it all at one time. I don't think that this is, you know, albeit the people not being the model citizens, if you're talking about a drug deal or if you're talking about things like that, that's not what you're generally going to find. I don't necessarily view this as a weak case. And so I would like to know in terms of both direct and circumstantial, what is your best argument as to the strength of your case? Like you mentioned the cigarette butt on the driver's side, you know, that you have the testimony of a co-defendant who testifies and actually took responsibility. So I kind of, if you can incorporate the strength of your case with all of that, I would like to hear what you think your best case is. Immediately after the crime, Mr. Shears returns to the apartment that he shares with about 90 different people, including his co-defendant, and he is wearing a bloody shirt that belongs to his sister, and he's wearing it inside out and backwards. The sister comments on that. The only evidence of that is the sister, right? No, that's not true. There is a 5-year-old boy who lives in the house. No one's taking him seriously. I think a 5-year-old boy would know. What was going on about Ninja? Well, now, I want to know what the testimony at trial was. I'm getting to that. Okay, whether, I mean, we can all evaluate whether, yeah. Boy, I saw him with the shirt. Boy's parents corroborate him as saying, I saw him with the bloody shirt. Parents could not corroborate the blood but did corroborate the existence of the shirt. There was a fire shortly thereafter, and that shirt disappeared. The inference is that Shears came home with a shirt, perhaps bloody, likely bloody, and then burned it that night. There is a watch that was found at the crime scene that the sister identified before being asked about the watch. She said, do you know if your brother has a watch? Yes, I do. It's like a Tommy Hilfiger watch. It is like a Timania watch. That watch, in fact, is a Seiko titanium watch. That watch found at the crime scene was his. And so even though the sister has been impeached by her family members, she's correct on the watch, she's correct on her own shirt, and she should be believed, particularly because the family members that are doubting her credibility have a reason to do so because Shears is also their family member. So we've got the oddy, the blood, and the watch. Those are the big things. Hickson's testimony can be corroborated. I'm running out of time. Hickson's testimony is corroborated. I want to hear it, so take the time, please. Hickson's credibility is corroborated by the statement she tells before she is arrested to her friend, Mr. Bazile. This is one of the few people associated with this, people that has any moral compass whatsoever, because he calls the police, turns her in. The statement she gives to him is that, I did it with Shears and Hall. While she's in jail, she also tells a cellmate that, I did it with Shears and Hall. Now ordinarily we wouldn't believe that cellmate, that jailhouse confession. The defense brings that evidence in a trial because they need to discredit Hickson and that she's minimizing her role in the crime. All of the physical impossibilities that the defense can raise. Well, she testifies at the crime. She does. She gets a deal. She takes 12 years. What's her testimony relative to finding the body with a condition of the body? Exactly as it's found. Absolutely corroborated. She describes exactly how it happens. She says, I lost a fingernail. A fingernail is found at the crime scene. She says, we stripped the body naked and threw it over a fence. The evidence is that he was stabbed in one place, bled to death, and they stripped him and found him over the fence. She talks about the cigarette. She talks about Scherrer's mentioning on the way back that he lost his watch. The doubt from Hickson comes in that her initial statement to police is that she named two other people. One of those people turns out not to be Hickson. Well, that's one. Another one is that her time frame absolutely is impossible. It's not absolutely impossible.  It's plausible, but it's a stretch. I think it can be easily resolved if we accept the fact that Now, the DNA evidence is what? Of the cigarette? Saliva, I believe. Found in the driver's seat of the car linking Scherrer's to it. Okay. And what was the testimony relative to attaching it to Scherrer's? It was a match. It was a statistical match under DNA probability, excluding nearly everybody else in the world, almost certainly. The evidence found of the crime scene, the DNA, was not nearly as precise. There was no DNA on the murder weapon, and things had degraded in the time that they found the body, but the cigarette butt was linked directly to it. Now, was there ever any indication that an act of prostitution occurred? This is where Hickson's credibility is the weakest, because she changes her story many times about how she met Mr. Foth, and whether it was for an act of prostitution or for drugs, and whether he was seeking a prostitute or drugs, but there seems to be no indication that they actually had sex. However, his body is found after death with some semen on his leg. The medical examiner explained that. It says that is common in male homicide victims due to rigor mortis, and it's not an indication of sexual activity, but we really don't know. And at the trial, Hall and Scherz were tried together? Yes. Did either testify? No. And that's the key point about the car. There is no innocent explanation of how these people got it. Well, what did people... Okay, the car wasn't actually the victim's. It belonged to someone the victim was staying with? Correct. What was the testimony at trial about how he got the car and when he got it? The victim is having financial and drug problems in San Francisco. He moves to San Diego. But when did they testify how he got the car? Did the owner of the car testify? Yes. Yes, she did. She's allowing this man to stay in her home. She is loaning him the car that day so he can go meet several friends. The plan is that they're all going to meet for dinner. Actually, it happens on the route between where the Hickson picked him up and the body is discovered. And several people are trying to call the victim and arrange a ride because they know he has the car. He doesn't pick up one person when he's supposed to pick him up, presumably because he's out trying to find the prostitute or the drugs. When they call him again, no one ever answers the phone, and then he's dead. He has the car. One question I have is, is your recitation of this evidence, is it primarily for purposes of, you agree that it's a Brecht standard that applies, right? At the bottom, yes. There's a long way to get to it, yes. Or is it a demonstration that this is a rational inference? Both. We're good all the way through. The top, it's rational. If there's confusion about the instruction, as we've discussed, then the standard is void, and that's what the Court of Appeal applied, the reasonable likelihood standard. Did the jury apply this correctly? Yes, they did. Next. But that wouldn't matter to us. If this was just a state law problem, we wouldn't have a problem. Exactly. If it's a state law problem, the federal, if there's federal analysis. If it's an otherwise rational, but it becomes kind of murky as a result because if it's a rational inference, but if it's only rational given the record as a whole. It's rational. Sorry to interrupt, but it's rational, so it's rational, there's no error. There's a state lawyer that we know because the state court told us that there's a state lawyer. That state court error then implicates federal rights. But why did the state law say it was an error? Was it not because they didn't think it was a rational inference? Or they just thought it was a bad idea. The Court of Appeal here is following CREATE, though. I think they're bound. Right. What did CREATE say? I mean, what is the reason why it's not a permissible state law instruction? The CREATE is the opinion that says that, CREATE actually says it is not rational to use in a rape case, but they apply due process analysis that is similar to the one I'm talking about here, and they say there's no problem. And there's, okay, one other. Wait a minute. So what they're really applying is a version of harmless error. Wouldn't you say it's not? Sure. Yes, it's fair, yeah. And I would say the Boyd reasonable likelihood standard has a harmless error component subsumed within it. It is a harmless error standard. It's probably not all too different from a Brecht standard. That's fair, yes. I agree with that. I also throw in that there's the AEDPA standard, right? So even if we believe, we believe at this day, today, that the California Court of Appeal misapplied that reasonable likelihood instruction standard, it's reasonable under the AEDPA. No, but that can't be right, because if there was a constitutional problem here, and it should have been a Chapman, then it should have been a Chapman standard. But still, as I understand the Supreme Court law, you don't do it twice, because whether the Chapman standard was reasonably applied is always going to be a less favorable to the State than a Brecht standard. So you apply a Brecht standard. The Chapman thing falls out, it seems to me. I don't see how Chapman is implicated, because it's irrational. But even if it were, I think it still falls out. Okay. Okay. Thank you very much. Very useful argument. Thank you. Good morning, Your Honors. May it please the Court. Vivian Fu for Ronny Scherz. First, I'd like to thank the Court for rescheduling oral argument, which is greatly appreciated. To begin, I want to clarify the standard of review with respect to the State court decision. With respect to the State court determination of error, the State court never said that this was not constitutional error. The State court found error cited to Prieto, which in turn cites to Barker, and Barker relies on Bonds v. United States for the proposition that a permissive inference comports with due process if the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt. So because Prieto and Barker mirror the language and approach used by the Supreme Court and this Court in analyzing the constitutionality of permissive inferences, we set forth that the State court finding of error actually includes a finding of Federal constitutional error. The State court didn't explicitly say that, whether the finding of error includes Federal constitutional error. I'm sorry. Could you slow down just a little bit for me? I'm sorry. Thank you. I'm sorry. So the State court did not explicitly say whether it was Federal constitutional error. So either it meant to include it, and by its rationale, that seems pretty obvious, or it failed to decide the issue. And if it failed to decide the issue, this Court would review de novo whether it was. But what if this is an interesting and a little bit of a sidetrack, so don't spend too much time on it, but if we actually thought that they did determine that it was unconstitutional, we're presumably not bound by that. But on the other hand, it's – this has come up in other cases. This is why it interests me. If they're finding that it was Federally unconstitutional, do we – how do we review that? Do we say, well, they're right?  Do we skip it, or what do we do with that one? We just skip it and then go to whether their harmless error review was reasonable. I mean, the State's – Suppose we thought they were wrong, then it wasn't really rational. If the State's allowed to be more protective of rights, then – Well, that's true. But in terms of us overruling them on – or granting habeas, do we simply assume their constitutional ruling? In this context, I think that you would. I think that you would – if the State court found constitutional error, you would defer to that, just like you would – I mean, under AEDPA, you would defer, just like you would in any other – a different sort of finding. And then I – I think 2454-G1 is a two-way ratchet. In other words, if they find it's a constitutional problem, then we defer to that, too. If they find – well, in this case, I would argue that, yes. Okay. Go ahead. Well, then that – so in some cases, they would defer, in some they wouldn't? That can't be – that can't – I'm going to stick to this case. Okay. The State court does follow the rationale set forth in the Supreme Court, Ulster County, Francis B. Franklin, Schwendeman – in this court, Schwendeman and Hanna. So we – the State court appears to have found constitutional error. With respect to – and the district court correctly found with respect to the murder that there was constitutional error. I mean, it can't be said with substantial assurance that the murder – that murder is more likely to flow from possession of stolen goods. Well, but this is felony murder. See, this is why it seems – first of all, it's felony murder, and there's also a special circumstance. And I'm not totally understanding – and I didn't ask this to the deputy AG – how those two fit together here. You – I gather that perhaps your primary interest here is the special circumstance, or both. And you are making the same argument with respect to both, essentially? Or you think it's stronger with respect to the special circumstances, or what? The special – the jury was instructed to make a finding on the special circumstance after it made a finding on the murder. So it would have used, you know, Caljic 215 to erroneously get to its decision on the murder. So it doesn't really affect the special. The 215 affects the murder. Well, it affects the murder. And because of the murder – I mean, because they found the murder first. You can't – you can't – if you don't find first-degree murder, then you don't get to the special. Then you don't get to the special. Yeah. Right. So I think that's why. I'm not arguing that they also would have applied it to – for the special. Well, if they didn't find – if they didn't – if they used it – The special is a little different. Yeah. The special is a little different because the special requires an additional element that the robbery be committed – have an independent felonious purpose. And that's what distinguishes it from felony murder. But our argument – we think the instructions – and I think there was a question earlier about the instruction on the special circumstance. That doesn't help the problem with Caljic 215 because the jury was instructed to decide on the murder first. So they would have made the leap from the possession of the car with a little bit of extra to murder. And then having found murder, then they would have decided on the special circumstance. All right. Can you explain specifically – I understand completely why if the verdict were a premeditated murder, there'd be a leap because you – how would you get from the possession to the mental states and so on that were necessary for murder. But I don't – for a premeditated first degree murder. But I'm having a somewhat harder time seeing why if it's a felony murder – and I know that the California Supreme Court case was a felony murder, but I still would like to know just to have an articulation of why – what it is that requires a further leap once you – if this instruction was valid for robbery. And I have some question about that. But if it were, why isn't it good enough for felony murder? Well, because it's logical – it's natural and logical to infer a theft-related offense from the possession. Well, I don't particularly see why it's rational to infer robbery, which includes a set of understandings, for example, about use of force. I mean, for all we know, he embezzled it or he stole it from the front of his house or something. So I don't know why you'd infer robbery. So that's problem one. But problem two is, assuming you would infer robbery, why would you – why couldn't you, given the definition of felony murder, infer the felony murder? Well, I think it's problematic. In some cases, it might be a rational inference. But, you know, the Supreme Court in this Court has emphasized that it's also a very fact-specific review. And in this case, given that the evidence was so weak with respect to everything other than Sheriff's possession of the car at some point, it's not a rational inference. But what is – you're not being helpful, because I want to know what fact it is that one has to infer to get to the felony murder additional to the robbery that is not rational to infer. Okay. Oh, okay. So you would have to infer that Sheriff's possessed the car and then Sheriff's robbed the victim and that Sheriff's killed the victim. No. You see, that's not why you wouldn't have to infer that, that he killed the victim. That's the problem. You'd have to infer that the victim was killed in the course of the robbery or not even in the course of the robbery. Yes, in the course of the robbery, but not necessarily to advance the robbery. Okay. But that the robbery – the murder occurred during the robbery. But you would have to infer – you would have to believe Lena Hickson's testimony and infer that all of this happened in one package and it wasn't that he just – you know, she gave him the car. You know, there was some testimony that he said that Lena said it was her mother's car. She was also seen with the car. He wasn't the only one hauled, seen with the car. The cigarette butt that was found in the car had both Lena Hickson's DNA and his DNA mixed together. But that all goes to the inference of the robbery. And what I'm trying to figure out – and as I say, I can understand an argument that the inference of the robbery is a really poor inference. But if you could infer the robbery, why couldn't you infer the murder? A felony murder, not – I understand why you couldn't infer a premeditated murder. Well, I think Pareto does speak to that exactly because Pareto – It does and it says that, but I just need a sentence to explain it to me. Well, I mean, the sentence would be that it's not a logical inference because murder doesn't flow from robbery or possession of stolen property. It's just not a – there's just not substantial – I mean, in the Supreme Court's words, there just isn't substantial assurance that it's more likely than not. Well, if – but it could – this instruction still after Pareto could be given for a robbery. It could be given for theft offenses. I believe it can be given for theft-related offenses. So if this had only been if, let's say, the victim were alive and this were a robbery, then that – it would have been a proper instruction, right? And a felony murder starts – it happens because of the robbery, right? Right. There is no Ninth Circuit law upholding this instruction for a robbery. Or any – or Supreme Court law or any appellate court law that I know of that, just for a robbery. No. Upholding this instruction. I'm sorry? I'm sorry. What was your question? Is there any case law upholding this – I understand California allows it, but is there a Federal appellate? Not that I'm aware of, no. With regard to robbery? No. That's correct. All right. Now, are you going to address what I understand to be the State's major argument, which is that you have to look at the record as a whole to determine whether this is a permissible infringement? Some of the Supreme Court cases seem to read that way. Yes. What about that? Yes. Looking at the record as a whole. Right. Yes. And I believe definitely the record as a whole establishes that the error had a substantial and injurious effect on the verdict. I mean, the evidence – I mean, the magistrate judge in this case produced an extremely thoughtful 90-page R&R, one of the most exhaustive and detailed I've ever read. And he went through every single detail and concluded that he had grave doubt about whether there was a substantial and injurious effect on the verdict. Some of the things he – you know, he states that the prosecution relied almost exclusively on the testimony of Lena Hickson, characterizes her testimony as simply unbelievable. She lied numerous times about the identity of the murderers. But what can say – I mean, surely if this inference instruction weren't given and if, indeed, the inference weren't made, there would be substantial evidence. You couldn't do a Jackson v. Virginia in this case. No. That's correct. But that's not – that's not relevant here in this Court. In Schwendemann and Hannah, also stated, there is substantial evidence to convict and that's not the issue. The issue is whether the inference was erroneous. And the problem in those cases and also in this case – Well, let's say if I – let's say if I think, and I'm giving you this hypothetical, that it's a strong case, that I view the evidence differently than you, then I can find the error harmless, correct? Well, I think – Tell me where I'd be wrong on that. Part of the problem is that this instruction singles out evidence of possession of the stolen vehicle. And it gives the jury a simpler path to go. So it doesn't have to parse through this whole complicated and changing – Okay. Even if they hadn't given that instruction, how would this case really be different? Because the car would still be there. The timing – it would still be the same time, you know, and any prosecutor worth their salt would say that, you know, we put him in this vehicle at this time relative to when he was killed. So how really would the instruction have changed that? Well, because, again, because the instruction focuses – the strongest evidence in this case was the fact that Sharers was in or around the vehicle at some – you know, at some point a few days after the murder. Other people were, too. There are other people seen with it. Lena Hickson – Well, but there's also evidence that he was in the vehicle at the time of the murder, right? Not at the time of the murder. No, no. Just after. Just after. But there's evidence that he was at the murder, I guess. No, there isn't, actually. Well, there is evidence. But Hickson – Well, just Hickson. Hickson. I mean, you can't say – I mean, you don't like the evidence, but – Right. I mean, someone puts him right there and says he committed it, right? I mean, there's no physical evidence. All the Gatorade bottle, the shoes, the T-shirt – there were all these items that were found at the site, and none of them could be linked. And the watch? And the watch – you know, the evidence on the watch was so equivocal, and it was based on – Well, yeah, we can – those are all things that you argue. But when you tell me there's no evidence that he committed the murder, that's not true. Right. There was very weak evidence. Let me – That's your assessment. But what if I thought that it's pretty good? Then what – how does that affect the giving of this instruction? Well, I still think that because – the jury is going to take the easiest path. They're given two paths. They can either look – they say, oh, well, you know, he was in possession of the car. Definitely, you know, with a little bit of corroboration, okay, he committed the murder. You know, and because there's this other evidence, too, but they don't have to – it just – Do you think – do you really think a jury would convict someone of murder because they have a car? In this case, I don't think it's – Do the instructions allow you to convict someone of murder just because you're in possession of a vehicle? The instructions said if you find – I have the exact reading. It says you can't do it without corroboration, right? But the corroboration need only be slight and need not by itself be sufficient to warrant an inference of guilt. And as corroboration, you can consider, you know, all these attributes of time, place, manner. But it says, you know, if you find that the defendant was in the possession of recently stolen property, it permits an inference that the defendant is guilty of the crime of murder. I mean, and it singles out that evidence. I mean, this instruction is very specific, and the specific controls over the general. And this Court – in the Supreme Court, it says that general instructions on the burden of doubt and – But at a minimum, this instruction, it seems, was telling the jury in terms of what we were talking before, of what's a rational constructive evidence that this is. That this is rational. This is a rational inference that you can make. Yes, yes. So it was taking away from the jury the question of whether it's a rational inference, essentially. Yes, yes, definitely. I mean, the jury was instructed that this is what they could do. And it's – Well, somebody in the jury room said, that's not rational to me. I don't understand why it is that he – just because he has the car, that's a good reason to think he committed a murder. The other jurors would say, oh, no, no, the jury's – the judge told us that this is – Right. And the jury's assumed to have followed the instructions that it's given. It was given this instruction that it can infer murder from possession and slight corroboration and, you know, applying Brecht. Well, if you want to find someone guilty of murder with the other instructions, does the felony murder instruction say that possession of a vehicle allows you to convict someone of felony murder? Not specifically. But it doesn't – So the argument could be made it confuses you. But the murder instructions were correct, right? The murder instructions were correct. But that doesn't take away from the fact that this is a specific instruction that they could also – Because they could still do this. And in terms of the ambiguity, you know, I don't think Boyd – I think counsel made an argument that Boyd applies in. And Boyd is not – I mean, the Supreme Court had said I think it's a – But do you agree that Brecht applies in this double business with Chapman doesn't matter? The whole issue about whether Chapman applied or didn't apply in State court seems to be totally irrelevant. Well, it just means that the State court analysis is contrary and you would do a de novo. But it doesn't make a difference because either way, we'd apply Brecht. Even if they'd done it right, we'd still apply Brecht. Well, I believe under AEDPA, if you didn't find error in their harmless error analysis, that you wouldn't apply. No, you can't because you'd still apply Brecht anyway. I don't see any difference. It just doesn't – it seems like a non-issue.  Well, I agree that this Court should apply Brecht. What was the defense at trial? The defense at trial? Well, neither defendant testified. They didn't testify. So what was the argued defense? Was it just attacking the prosecution's case? No, there was evidence that other parties were involved. There was a Michael Washington who was Lena Hickson's pimp. The boyfriend? Yeah, boyfriend. And there was also another man who lived in the apartment. I think his name was Jimmy Washington. And who was found later that – I think the defense or the prosecution was trying to call him as a witness, but he was found to be incompetent. But there was evidence that his shoe size was the same as the shoes that were found at the crime site. And there was some other evidence. So it was essentially that Hickson was more involved than she said she was, and that she was covering up for somebody else. For somebody else. Exactly. And so – and she blamed two people to begin with. She initially said two other people. Right. She initially said two other people. And then she happened on these guys. And the defense was that, well, she's trying to protect her boyfriend. Did they put on any alibi evidence that they were somewhere else?  Okay. You're over your time. Thank you very much for your argument. We'll give you one minute in rebuttal. I think the court understands it. There's some – Michael Washington, the ringleader, was out of state, so he couldn't have done it. Jimmy Washington, the prosecutor, tried to call to see whether he could do it. He couldn't testify. He was found mentally unfit. He didn't understand the evidence. The prosecutor tried to call. The prosecutor tried to call. The other two – the first two names, one of those names does not exist. The other name was a long-time friend of – There was some third-party argument made. It doesn't hold any water. So just give me the thumbnail sketch of your analysis, and if you lose at any point, what your backup argument is. Bottom's correct. We'll start at the top. Starting at the top, this is rational. The instruction is not perfect, but it permits a rational inference, and that's all we need. It's not perfect, and so the Court of Appeal and the State Court say don't give it in the future. In this case, it is constitutional under the instruction standard. Next, that decision is reasonable under the EDFA. We know that because there are Supreme Court decisions and cases from Georgia and New York that say it's okay. But they didn't make that. I mean, this is where I get really confused. I mean, it may be reasonable on the EDFA, but it wasn't made on the EDFA. That wasn't what the Court said. The Court said it wasn't rational. So why should we – Okay, maybe there's a mistake here. The State Court of Appeal in this case said it was rational, said it was fine. The California Supreme Court in CREAO says it's not rational, and frankly, I don't understand that. And with the rape, which is the case – Do you think we could uphold the State Court of Appeals even though it was contrary to the State Supreme Court? Absolutely. Brecht allows you to do that, first of all. Well, Brecht does on a – as to homicidal, I understand that. But you're saying that we should be deferring to the State Court of Appeals as to whether this was a rational inference, and how can we do that when we know that under the – that the State Supreme Court says it's not? The State Court of Appeal is the one that's in front of you, and they got it right. I think you're asking opposing counsel as to why it was not rational, and we can't come up with a reason why it's not. The one – I understand that, but the State – the law in California is that it's not. After. Yeah. It's not – it's not to be – they've said that. I don't think that can be squared with rationality. So we can't be deferring to California's view that it is because California's view is that it's not. But if it's rational, it's rational. That's different. But I was just questioning your EDPA issue, your EDPA point. The Court of Appeals – It matters because it matters to us how we approach it. The Court of Appeal is correct. You can defer to them no matter what any other State court says. Okay. Now, if we don't agree with that, then what's your next argument? Correct. And that is based on the strength of the case? The strong case we got, yeah. There's no chance for an innocent person to have possessed this car. There's no chance anybody else did it. Her statement is corroborated in the key aspects as to Mr. Schur's – There are at least 100 possible explanations for why he could have ended up with the car even if he wasn't involved in the murder. I mean, for example, you know, she wanted some drugs, so he sold her drugs and she gave him the car afterwards. I mean, there are plenty of them. There's no testimony as to that fact. There's no evidence as to that. So we're linking the instructions to the evidence, the rational inference, and the only rational inference is guilt of murder. Okay. Thank you very much for your argument. And both of you were really very helpful in a hard and interesting case. The case is Scherrer's v. Woodford is submitted and we'll go on to Prodomo v. Holder.
judges: Fletcher B. , Berzon, Callahan